**UNITED STATES DISTRICT COURT**
**F O R  T H E**
**MIDDLE DISTRICT OF FLORIDA**

|  |  |
|---|---|
| CARLOS MELENDEZ,<br>3721 VENZIA VIEW<br>LEANDER, TX 78641<br>          Plaintiff<br><br>        v.<br><br>DOUGLAS A. COLLINS,<br>SECRETARY,<br>U.S. DEPARTMENT OF<br>VETERANS AFFAIRS,<br>810 VERMONT AVE., NW<br>WASHINGTON, DC 20420<br>          Defendant. | Case No.:<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Date Action Filed: March 24, 2026 |

SECOND CORRECTED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Carlos Melendez ("Plaintiff"), by and through his

undersigned counsel, and brings this action for damages against the Defendant,

Douglas A. Collins, as Secretary of the U.S. Department of Veterans Affairs

("VA" or "Agency"), and alleges as follows:

SUMMARY OF THE ACTION

1.      This is a civil rights action brought by a disabled VA employee, who

has been subject to harassment (non-sexual) and a hostile work environment, due to

his disability.

2.      The Plaintiff is and has always sustained a disability, which the

1
COMPLAINT

Responsible Management Officials ("RMO") in this action were well aware of and proceeded to improperly act giving rise to this complaint.

3.      The plaintiff previously filed an Equal Employment Opportunity Commission ("EEOC") hearing request, was assigned an Administrative Judge, and litigated the matter, in part, through the administrative process afforded him, until an unfavorable decision was issued by the EEOC, with a Final Agency Decision/Order being issue on March 23, 2023.

4.      The Plaintiff thereafter filed an appeal with the Office of Federal Operations ("OFO"), appealing the unfavorable decision and Final Agency Order on April 13, 2023.

5.      The OFO issued a decision confirming the EEOC unfavorable decision on June 3, 2025, therefore satisfying the plaintiff's requirement in exhausting his administrative remedies prior to filing suit.

6.      At issue in this suit is whether the VA subjected Plaintiff to discrimination, including harassment, on the bases of disability, and in reprisal for prior EEO activity when:

   i.      From 2013 through October 22, 2019 and ongoing, John Lunden, Capacity Performance & Engineering supervisor, and Ed Kelly, Capacity Performance and Engineering Director, declined to meet with the Plaintiff;

   ii.      From February 1, 2016 – present, Mr. Lunden failed to include plaintiff in meeting which resulted in plaintiff being ostracized from any

meaningful work;

iii.      On February 9, 2016, Mr. Kelly denied the plaintiff the opportunity to be acting supervisor;

iv.      On or about March 1, 2016 Mr. Kelly failed to timely approve the plaintiff's reasonable accommodation;

v.      On November 11, 2016, Mr. Lunden lowered the plaintiff's performance appraisal rating from exceptional to fully successful;

vi.      On or about February 28, 2018, Mr. Lunden failed to timely respond to the plaintiff with feedback regarding the Network Capacity Document;

vii.      On or about June 12, 2018, Mr. Lunden made derogatory comments about the plaintiff;

viii.      On or about June 29, 2018, Mr. Lunden threatened to remove plaintiff from his employment with the VA through a Reduction in Force ("RIF") action.

ix.      On or about July 12, 2018, Mr. Lunden ordered the plaintiff to not have any communications with the Cloud Engineering group, thereby preventing him from obtaining work and or assignments;

x.      On or about July 20, 2018 and on August 12 and August 21, 2019, Mr. Lunden and or Mr. Kelly failed to provide direction, appropriate instruction(s), or any feedback whatsoever, to plaintiff about his work

COMPLAINT

assignments, proposal for cloud metrics, and his work in general, as required;

xi.	On or about August 28 – Augst 30, 2019, Mr. Lunden tasked plaintiff with writing a second research paper to correct a previous version, and failed to respond to plaintiff's correspondence when plaintiff informed the agency he had a broken finger and would therefore not be able to finish his second research paper by the previously assigned August 28, 2019 deadline;

xii.	On or about September 5, 2019,  Mr. Lunden accused the plaintiff of untimely completion of his work despite receiving a deadline extension and submitting the completed project within the granted extended deadline;

xiii.	On or about September 16, 2019, Mr. Lunden emailed plaintiff a written counseling, titled "Notification of Poor Performance in a Critical/Noncritical Element(s)" and failed to meaningfully respond to plaintiff's correspondence regarding tasks assigned to correct the alleged poor performance;

xiv.	On or about October 10, 2019, Mr. Kelly failed to provide feedback for over forty (40) days, and failed to respond to plaintiff's correspondence regarding feedback on the finalized research paper, which was timely submitted;

xv.	On or about October 21, 2019, Mr. Lunden assigned the plaintiff nine (9) TMS training courses and on November 5, 2019, Mr. Kelly assigned plaintiff four (4) additional trainings for which plaintiff was re    quired      to

4

COMPLAINT

write another paper.

xvi.      On or about November 5, 2019, Mr. Lunden stated that management was not going to purchase software, that was required for plaintiff to complete his work, rather simply criticized plaintiff's work.

xvii.      On or about December 1, 2019, Mr. Lunden issued the plaintiff a rating of "Unacceptable" for all three (3) critical elements, made false statements on plaintiff's close-out appraisal regarding training, and misrepresented that plaintiff was tasked to lead an effort to install a wan emulation tool;

xviii.      On or about December 2, 2019, Mr. Kelly declined to change plaintiff's unacceptable rating on is appraisal.

7.      As a result of this intentional discrimination and retaliation, Mr. Melendez is seeking all available remedies, including back pay and benefits, and other compensatory damages including non-pecuniary damages, as well as his attorney's fees and expenses.

## JURY TRIAL DEMAND

8.      Under Fed. R. Civ. P. 38 (b), Plaintiff hereby demand trial by jury on all issues triable to a jury.

## JURISDICTION

9.      This action arises under Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, *et seq.*, Title VII of the Civil Rights Act of

5

COMPLAINT

1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This Court has proper subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1341 (federal question) and 1343 (civil rights).

## PARTIES AND VENUE

10. Plaintiff, Carlos Melendez, is a citizen of the United States and is a resident of Williamson County, Texas. Plaintiff is an employee of the Agency.

11. Plaintiff is informed and believes, and alleges that at all times relevant herein, Agency/Defendant was responsible in some manner for the occurrences, offenses, and injuries alleged in this complaint. Plaintiff will further amend this Complaint, if needed, to show or correct for true names and capacities, and facts, when the same have been ascertained.

12. All of Plaintiff's claims arise under Federal Law.

13. Plaintiff has exhausted the required administrative remedies per the Final Agency Decision dated March 23, 2023, and the OFO decision dated June 3, 2025. Pursuant to 29 C.F.R. §1614.407(b), Plaintiff is authorized to file this civil action in an appropriate U.S. District Court.

14. Defendant, Douglas A. Collins, is sued in his official capacity as the current Head of the U.S. Department of Veterans Affairs, an agency of the United

6
COMPLAINT

States, and Plaintiff's employer.

15. Venue is proper in the United States District Court for the District of Columbia, and Defendant is subject to the personal jurisdiction of the United States District Court for the District of Columbia because Defendant maintains facilities and business operations in this District. 28 U.S.C. § 1391(b) and (e); 42 U.S.C. § 2000e-5(f).

16. Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3), as Plaintiff is a HQ asset employed by the Agency in the District of Columbia, and plaintiff's employment records are maintained by the Agency in this judicial district.

## FACTUAL ALLEGATIONS

17. On or about January 27, 2016, plaintiff requested accommodation of a disability, seeking 100% telework.

18. On January 27, 2016, the Local Reasonable Accommodation Coordinator ("LRAC") sent an email to plaintiff's supervisor and deciding management official ("DMO"), Mr. Kelly, notifying him of plaintiff's request for accommodation and including the Acknowledgment of Receipt of Request form.

19. Mr. Kelly did not respond to the LRAC.

20. On February 2, 2016, the LRAC followed up with Mr. Kelly, resending notice of plaintiff's request for an accommodation, and notifying Mr. Kelly that response was due the day prior.

21.     Plaintiff's notice was once again ignored.

22.     A third attempt was made to follow up with Mr. Kelly on February 9, 2016, and again the request went ignored.

23.     On March 2, 2016, plaintiff asked if he was permitted to contact the DMO directly, since the DMO was unresponsive to the LRAC in the RA and interactive process.  The LRAC advised plaintiff that he was permitted to reach out to Mr. Kelly, the DMO directly, as Mr. Kelly remained unresponsive to the LRAC. The LRAC also indicated that she had now reported Mr. Kelly's unresponsiveness to "upper management."

24.     The RMO continued to ignore all correspondence and on March 10, 2016, plaintiff began teleworking as a reasonable accommodation.

25.     Mr. Lunden was well aware of plaintiff's disability by June 17, 2016 as plaintiff notified him directly, amongst others.

26.     On October 11, 2019, plaintiff notified Mr. Kelly that he needed to take leave associated with an appointment with a Hand orthopedic specialist, due to issues with his hand. Plaintiff also provided Mr. Kelly with a medical note documenting a right digital injury which resulted in disability and limitation in plaintiff's right hand.

27.      On February 3, 2016, Mr. Edward Kelly sent out an email asking for volunteers to temporarily fill the duties assigned to the Engineering

Division Supervisor position.

28.    On February 3, 206, plaintiff expressed interest in volunteering for the position, as he had come to the Agency as a Supervisor.  Mr. Kelly responded to plaintiff, alleging that the only criteria he was using for selection was seniority. However, despite having seniority over Mr. Lunden, Mr. Lunden was selected for the acting supervisor position as a 360 day detail, and eventually selected for the position full-time.

29.    On Friday, April 14, 2017, Mr. Lunden sent an email to plaintiff with his mid-year review.  Mr. Lunden marked plaintiff as "Fully Successful", but commented "That said, I need you to deliver on tasks assigned." In response, plaintiff stated he wanted to review the tasks identified by Mr. Lunden before signing, and would have the signed evaluation returned by the following Tuesday. In response, Mr. Lunden curtly retorted, "Why Tuesday?".

30.    Having not been offered an opportunity to meet about his midyear evaluation and the tasks Mr. Lunden identified, plaintiff requested to meet with Mr. Lunden. Only then did Mr. Lunden agree to discuss plaintiff's mid-year evaluation with him.

31.    On October 31, 2017, plaintiff submitted his self-assessment for his annual evaluation and rating. After submitting his self-assessment for his annual evaluation, plaintiff did not receive feedback or an opportunity to

discuss his assessment or rating with Mr. Lunden. Instead, Mr. Lunden merely emailed plaintiff his FY 2017 Rating form to sign a month later on November 30, 2017. Plaintiff had to ask Mr. Lunden if he had read his 2017 self-assessment. Only then did Mr. Lunden offer to meet with plaintiff to discuss the previously submitted self-assessment.

32.    On April 18, 2017, plaintiff submitted to Mr. Lunden a first draft of an assignment, a Network Capacity and Planning document. Having received no feedback, on April 25, 2017, plaintiff followed up with Mr. Lunden to see if Mr. Lunden had reviewed the draft, with Mr. Lunden failing to respond until April 26, 2017, stating "very well written and informative document."

33.    Mr. Lunden then forwarded this email chain to Mr. Kelly, stating, "Just for info – he is claiming authorship." Mr. Lunden did not inform plaintiff that he doubted plaintiff's claim of authorship.

34.    On January 22, 2018, Mr. Lunden assigned plaintiff the following task: "We need your input/expertise regarding utilizing TSCO for network capacity management. Please provide a minimum of 3 use cases relative to network utilization. Can do as many as you like – but we need a good start. These should include what actionable information is being conveyed, a list of metrics of interest, customers who would consume the data, how the data should be presented (views, dashboards)." He was not provided with his

10

COMPLAINT

accommodation and instead bought his own desk.

35.     On February 13, 2018, plaintiff sent Mr. Lunden a draft of this assignment. Although Mr. Lunden advised that he would review and provide feedback, plaintiff did not receive a substantive response or feedback.

36.     On February 23, 2018, plaintiff again sent Mr. Lunden a draft of this assignment for Mr. Lunden's review asking for feedback. Having received no response from Mr. Lunden, plaintiff sent an email to Earl McMannis seeking feedback on his draft, asking, "do you think the document I created is good enough for what  John [Lunden] wants below?"

37.     On August 23, 2019, plaintiff confirmed the work to be completed on an assignment referred to as the Netropy Paper, which was to be due August 28, 2019.

38.      Due to a finger injury, plaintiff notified Mr. Lunden that he was unable to type, and could not complete the Netropy paper by the due date of August 28, 2019. On September 3, 2019, plaintiff submitted the finished Netropy Document to colleagues for review and feedback. Plaintiff kept Mr. Lunden apprised of the status of the Netropy Document, and that he had submitted the document to colleagues for review and feedback, and after receiving their feedback, plaintiff submitted the finished document to Mr. Lunden and Mr. Kelly.

11
COMPLAINT

39.     On September 3, 2019, plaintiff submitted the finished Netropy Document to colleagues for review and feedback and kept Mr. Lunden apprised of the status of the Netropy Document, and that he had submitted the document to colleagues for review and feedback.

40.     On September 5, 2019, Mr. Lunden responded to plaintiff, acknowledging receipt, but complaining that the Netropy Document was not timely submitted on August 28, 2019, despite plaintiff's notification of medical restrictions and his attempts to keep Mr. Lunden apprised of the status of the completion of the document.

41.     On October 15, 2019, plaintiff notified Mr. Mark Warner, who is in his chain of command, that he had repeatedly reached out to his manager, Mr. Lunden, on multiple occasions, to address concerns, but Mr. Lunden would not provide written recommendations.

42.     In November 2019, Mr. Kelly assigned plaintiff numerous trainings in TMS. However, Mr. Kelly did not provide plaintiff with sufficient time to complete these trainings and as such, plaintiff was required to ask for additional time to complete these trainings. Mr. Lunden required plaintiff to write summaries and responses to the trainings, in addition to the final tests, which are required to actually complete the trainings.

43.     Later, unbeknownst to plaintiff, Mr. Lunden forwarded his attempts to seek guidance on his performance to Mr. Kelly with the lone comment,

12

COMPLAINT

"FYI." Mr. Kelly was not otherwise involved in plaintiff's performance improvement period.

44.    On July 24, 2018, plaintiff sent an email to David Catanoso, supervisor of the Cloud Group, to offer assistance and to ask if he could participate or observe any Cloud workgroups.

45.    On July 25, 2018, Mr. Catanoso responded favorably, identifying areas in which they needed assistance and stating, "[a]ny assistance you can provide us in this area would be welcome." Mr. Catanoso did not express any concern with plaintiff having contacted him. Mr. Catonoso copied Mr. Lunden and Mr. Kelly on his response, since these were plaintiff's supervisors.

46.    By email dated July 25, 2018, Mr. Lunden gave plaintiff "Kudos" for making contact with the Cloud Group, and stated that plaintiff had "cracked a nut we have been trying to crack for some time."

47.    By email dated August 15, 2018, plaintiff informed Mr. Lunden he would be unable to meet the August 17, 2018 deadline for the proposal because he needed to meet with cloud team members to determine what their needs and expectations were. This was necessary to make recommendations as to what work he could provide to the Cloud group.

48.    Mr. Lunden would not allow plaintiff to meet with Cloud group members to assist with the development of the proposal.

13

COMPLAINT

49.    On Monday, August 20, 2018, plaintiff submitted his proposal.

50.    On August 24, 2018, Mr. Lunden sent plaintiff an email instructing him to "cease all Cloud related actions".  Mr. Lunden further stated, for the first time, that plaintiff's "action in this case was not appropriate"  Mr. Lunden instructed, "[m]oving forward do not reach out to a senior director of another group without myself and out director's approval. . . . Matters such as these should first be brought up to my attention prior to reaching out to higher level officials."

Count No. 1

### Violations of the REHABILITATION ACT
### OF 1973  29 U.S.C. §701 et. seq.
### (Disability
### Discrimination)

51.  The allegations in paragraphs 1-50 are realleged as if set forth fully herein.

52.  Defendant, an Agency of the Federal Government, is subject to the Rehabilitation Act of 1973, 29 U.S.C. §701 et seq., under sections 501 and 504.

53.  Section 501 of the Rehabilitation Act prohibits federal executive branch agencies from  discriminating against people with disabilities in any employment practices, including hiring,  promotions, training, firing, pay, or benefits. 29 U.S.C. § 791.

54.  Plaintiff is a disabled person whose physical impairments substantially limits his major  life activities.

55.  Plaintiff was otherwise qualified for the position he held.

14
COMPLAINT

56. Defendant knew of Plaintiff's disabilities based on the Plaintiff's previous request for a reasonable accommodation.

57. Pursuant to 29 U.S.C. § 791(f) and 42 U.S.C. § 12203(a), Defendant has violated Section 501 of the Rehabilitation Act by:

a.    Failing to provide effective reasonable accommodations for Plaintiff;

b.    failing to engage in interactive discussions as part of Plaintiff's reasonable accommodation requests;

c.    unduly delaying the processing of Plaintiff's RA requests;

d.    treating Plaintiff overly critically as compared to other employees to the point of harassment, creating a hostile and abusive work environment for him based on his requests for RAs;

58. As a direct and proximate result of Defendant's violations of Section 501 of the Rehabilitation Act, Plaintiff, Mr. Melendez has been damaged. Such damages include but are not limited to loss of pay; loss of benefits; past and future medical costs and expenses; payment of attorneys' fees and legal costs; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

59. Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794a,

Plaintiff prays for relief as set forth below.

## COUNT NO. 2

### Violations of the REHABILITATION ACT OF 1973  29 U.S.C. §701 et. seq.
### (Failure to Accommodate)

60. The allegations in paragraphs 1-50 are realleged as if set forth fully herein.

61. Plaintiff notified his employer of his disabilities and requested accommodations on multiple occasions.

62. Plaintiff was provided multiple inadequate accommodations in response to his multiple requests for RAs with respect to his disabilities.

63. As a direct and proximate result of Defendant's violations of Section 501 of the Rehabilitation Act, Plaintiff, Mr. Melendez has been damaged. Such damages include but are not limited to loss of pay; loss of benefits; past and future medical costs and expenses; payment of attorneys' fees and legal costs; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

64. Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794a, Plaintiff prays for relief as set forth below.

COUNT NO. 3

RETALIATION IN VIOLATION OF
TITLE VII

**42 U.S.C. §§ 2000e, et seq.**
**(Discrimination and Hostile**
**Work Environment)**

65.  The allegations in paragraphs 1-50 are realleged as if set forth fully herein.

66.  Section 504 of the Rehabilitation Act of 1973 prohibit discrimination based on an individual's race, national origin, color, religion, disability, and retaliation for the exercise of the rights it protects, including engaging in or participating in EEOC protected processes.

67.  Plaintiff is disabled.

68.  Defendant is liable for the retaliation alleged herein including, but not limited to, paragraphs 1 through 50, which actions all adversely affected the terms and conditions of Plaintiff's employment in violation of the Rehabilitation Act.

69.  Defendant is also liable for subjecting Mr. Melendez to a hostile work environment, disparate treatment, and disparate impact in retaliation for the exercise of rights protected under this Section.

70.  As a direct and proximate result of Defendant's unlawful and retaliatory acts in violation of Title VII of the Civil Rights Act, Plaintiff, Mr. Melendez has been damaged. Such damages include, but are not limited

to loss of pay; loss of benefits; past and future medical costs and expenses; payment of attorneys' fees and legal costs; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

71. Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794a, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Melendez respectfully requests that the Court enter judgment in his favor and award him the following relief:

a)      An Order declaring that Defendant violated Mr. Melendez's rights under the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and restraining and enjoining Defendant from further violations;

b)      Award Plaintiff back pay for lost wages and benefits and prejudgment interest thereon.

c)      Compensatory damages in an amount to be determined at trial to compensate Mr. Melendez for the physical and emotional pain, embarrassment, humiliation, mental anguish, medical costs, future medical costs, inconvenience, career loss, loss of professional reputation and career

opportunities, and loss of quality of life caused by Defendant's unlawful actions;

d)      Any and all accrued Thrift Savings Plan benefits;

e)      Award Plaintiff his full costs and reasonable attorney's fees; and

f)      Award such further relief as may be deemed just and appropriate.


Dated: March 24, 2026

Respectfully submitted,

By: /s/ Andi Kasimati

Andi Kasimati
SOLOMON, MAHARAJ &
KASIMATI, P.A.
5005 W. Laurel Street, Suite 216
Tampa, FL 33607
Telephone: (813)-497-7650
Facsimile:  (813) 434-2386
Email: andi@smkfirm.com
FL BAR No. 1007984
*Counsel for Plaintiff*